# Exhibit A

2120 - Served  
2220 - Not Served  
2320 - Served By Mail  
2420 - Served By Publication  
SUMMONS

2121 - Served  
2221 - Not Served  
2321 - Served By Mail  
2421 - Served By Publication  
ALIAS - SUMMONS



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ELITE STAFFING, INC., an Illinois
Corporation,

        Plaintiff,

v.

DIVERSAPACK, LLC, a Georgia Limited
Liability Company, DIVERSAPACK OF ILLINOIS, LLC,
a Delaware Limited Liability Company, DIVERSAPACK
OF MONROE, LLC, a Delaware Limited Liability
Company, DIVERSAPACK OF NORTH CAROLINA,
LLC, a Delaware Limited Liability Company, and
DIVERSAPACK OF CHINO, LLC, a Delaware Limited
Liability Company,

        Defendants.

No.

**PLEASE SERVE:**
Diversapack LLC
c/o CT Corporation System (Registered Agent)
208 S. LaSalle Street, Suite 814
Chicago, Illinois 60604

### SUMMONS

To each Defendant:  Diversapack LLC
        c/o CT Corporation System (Registered Agent), 208 S. LaSalle Street, Suite 814, Chicago, Illinois 60604

     YOU ARE SUMMONED and required to file an answer to the Verified Complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602.  **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

To the officer:

     This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.  This summons may not be served later than 30 days after its date.

WITNESS, _____ JUN 02 2011 _____, 2010 _____

_____
DOROTHY BROWN
Clerk of the Court

Date of Service: _____, 2011 _____
(To be inserted by officer on copy left with defendant or other person)

Name:        Richard K. Hellerman (ARNSTEIN & LEHR LLP)
Atty. for:      Plaintiff
Address:     120 South Riverside Plaza, Suite 1200
City/State/Zip: Chicago, Illinois 60606
Telephone:   312-876-7100
Atty. No.:     25188

**DOROTHY BROWN. CLERK OF THE CIRCUIT COURT OF COOK COUNTY. ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ELITE STAFFING, INC., an Illinois )
Corporation, )
                                )
        Plaintiff, )
                                )
     v. )     No.
                                )
DIVERSAPACK, LLC, a Georgia Limited )
Liability Company, DIVERSAPACK OF )
ILLINOIS, LLC, a Delaware Limited Liability )
Company, DIVERSAPACK OF )
MONROE, LLC, a Delaware Limited Liability )
Company, DIVERSAPACK OF NORTH )
CAROLINA, LLC, a Delaware Limited Liability )
Company, and DIVERSAPACK OF )
CHINO, LLC, a Delaware Limited )
Liability Company, )
                                )
        Defendants. )

### VERIFIED COMPLAINT FOR BREACH OF CONTRACT AND ACCOUNT STATED

Plaintiff, ELITE STAFFING, INC., by its attorneys, Arnstein & Lehr LLP, complains of defendants, DIVERSAPACK, LLC ("Diversapack"), DIVERSAPACK OF MONROE, LLC ("Diversapack Monroe"), DIVERSAPACK OF ILLINOIS, LLC ("Diversapack Illinois"), DIVERSAPACK OF NORTH CAROLINA, LLC ("Diversapack North Carolina") and DIVERSAPACK OF CHINO, LLC ("Diversapack Chino") states as follows.

1.    Plaintiff, Elite Staffing, Inc. ("Elite") is an Illinois corporation with offices in Illinois, including Cook County, Illinois.

2.    Defendant, Diversapack, LLC, is a Georgia limited liability company authorized to do, and in fact doing business, in Illinois, including Cook County, Illinois.

9609091.5

## COUNT I – BREACH OF PAYMENT AGREEMENT

3.     On March 19, 2009, in Chicago, Cook County, Illinois, Elite and Diversapack entered into a certain Payment Agreement (the "Payment Agreement").  A copy of the Payment Agreement is attached as Exhibit A.

4.     In the Payment Agreement, Diversapack acknowledged, *inter alia*, that Elite had been providing temporary labor services to certain companies (collectively referred to in the Payment Agreement as the "USC Companies"), that the USC Companies were indebted to Elite for the temporary labor services provided (the "Elite Indebtedness") and that the USC Companies were unable to pay the Elite Indebtedness (Exhibit A, ¶ 1).

5.     The Payment Agreement further recited, *inter alia*, that Diversapack desired to buy substantially all of the assets, stock or business of one or more of the USC Companies and, in connection therewith, also desired that Elite presently forbear from collecting the Elite Indebtedness and that Elite continue to provide temporary labor services to the USC Companies.  (Exhibit A, ¶ 1).

6.     In the Payment Agreement, Diversapack agreed that if it purchased any or all of the USC Companies, it would pay to Elite the outstanding portion of the Elite Indebtedness due from such USC Company(ies) in equal, interest free, weekly installments over a period of three months from that date of closing of such purchase(s). (Exhibit A, ¶ 3).

7.     Sometime after March 9, 2009, Diversapack purchased Precision Services & Manufacturing, LLC ("Precision"), one of the USC Companies; pursuant to Paragraph 3 of the Payment Agreement, as of March 19, 2009, Precision owed Elite One Million,

2

Seven Hundred Forty-Two Thousand Five Hundred Nine and 29/100 Dollars ($1,742,509.29) [the "Original Precision Indebtedness"]. (Exhibit A, ¶ 3).

8.      Elite received certain partial payments toward the Original Precision Indebtedness, but as of May 24, 2011, the Original Precision Indebtedness is One Million Sixty-Three Thousand One Hundred Fifty-Nine and 37/100 Dollars ($1,063,159.37).

9.      Paragraph 6 of the Payment Agreement provides:

> If either Party (the 'Defaulting Party') breaches or defaults in the full and timely performance of any of its respective covenants, duties or obligations set forth in this Payment Agreement, including, without limitation, Diversapack's timely payment of a portion of the Elite Indebtedness [*defined in the Payment Agreement to include the Original Precision Indebtedness*] due from Diversapack to Elite pursuant to Paragraph 3, then in addition to any and all other rights or remedies which the other Party (the 'Non-Defaulting Party') may have pursuant to this Payment Agreement, at law, in equity or otherwise, the Defaulting Party will be liable and will pay to the Non-Defaulting Party upon demand a sum equal to all attorneys' fees, court costs and related expenses which the Non-Defaulting Party incurs as a result of such breach or default, together with interest at the rate of one percent (1%) per month on all sums owed by the Defaulting Party to the Non-Defaulting Party from the date of such breach or default until actually paid.

(Exhibit A, ¶ 6).

10.     Paragraph 6.A. of the Payment Agreement provides:

> Upon Diversapack's failure to fully or timely pay to Elite any of the weekly payments pursuant to Paragraph 3, which failure continues two days after electronic notice thereof from Elite to Diversapack, the balance of the portion of the Elite Indebtedness due from Diversapack to Elite pursuant to Paragraph 3 shall be immediately due and payable in full and may be collectible immediately without any further notice to or demand upon Diversapack or action by Elite.

(Exhibit A, ¶ 6.A.).

3

9609091.5

11.     Elite has timely and completely performed all its obligations under the Payment Agreement.

12.     Diversapack's failure to pay the Elite Indebtedness due from Precision pursuant to the Payment Agreement constitutes a breach of the Payment Agreement by Diversapack.

13.     As a result of Diversapack's breach of the Payment Agreement as aforesaid, Elite has suffered damages in the amount of $1,063,159.37, plus interest, costs and attorneys' fees pursuant to the express terms of the Payment Agreement.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK, LLC:

(a)     in the amount of One Million Sixty-Three Thousand One Hundred Fifty-Nine and 37/100 Dollars ($1,063,159.37);

(b)     pre-judgment interest in the amount of one percent (1%) per month commencing three months after the closing of Diversapack's acquisition of Precision as provided in the Payment Agreement;

(c)     all of Elite's court costs, attorneys' fees and related expenses as provided in the Payment Agreement; and

(d)     such other relief as the Court may find to be appropriate under the circumstances of this case.

## COUNT II – BREACH OF STAFFING AGREEMENT

14-15.   Elite repeats and realleges Paragraphs 1-2 of Count I as and for Paragraph 14-15 of this Count II, as if fully set forth herein.

4

9609091.5

16.    On June 8, 2009, Elite and Diversapack entered into a certain Staffing Agreement (the "Staffing Agreement"). A copy of the Staffing Agreement is attached as Exhibit B.

17.    Pursuant to the Staffing Agreement, Elite and Diversapack agreed, *inter alia*, that Elite would provide Diversapack and Diversapack's affiliates with temporary labor services, and that Diversapack would *inter alia*, pay Elite amounts calculated in accordance with Attachment A to the Staffing Agreement (Exhibit B, ¶ 4).

18.    Elite provided Diversapack and its affiliates, Diversapack Monroe, Diversapack Illinois, Diversapack North Carolina and Diversapack Chino, with temporary labor services pursuant to the Staffing Agreement, but Diversapack has not paid Elite in full for such temporary labor services in accordance with the Staffing Agreement.

19.    As of May 1, 2011, there remains due and owing to Elite from Diversapack the following amount, for temporary labor services rendered by Elite to Diversapack and its affiliates pursuant to the Staffing Agreement:

(a)    Diversapack – $23,378.53

(b)    Diversapack Monroe – $808,111.44

(c)    Diversapack Illinois – $204,151.55

(d)    Diversapack North Carolina – $705.28

(e)    Diversapack Chino - $794,777.53

20.    Paragraph 4j of the Staffing Agreement provides, in pertinent part:

Unless otherwise directed by Elite, all unpaid, undisputed accounts will be considered in default after thirty (30) days from the invoice date, after which time a default charge will be imposed on [Diversapack] at a rate of one percent (1%) per month (ANNUAL PERCENTAGE RATE OF 12%) or the

5

maximum legal interest rate, whichever is lower on all unpaid balances. [Diversapack] agrees to pay the default charge together with any and all reasonable costs of collection, including, but not limited to, attorneys' fees.

(Exhibit B, ¶ 4.j.).

21.     Elite has timely and completely performed all its obligations under the Staffing Agreement.

22.     Diversapack's failure to pay Elite the amounts due under the Staffing Agreement constitutes a breach of the Staffing Agreement by Diversapack.

23.     As a result of Diversapack's breach of the Staffing Agreement as aforesaid, Elite has suffered damages in the amount of One Million Eight Hundred Thirty-One Thousand One Hundred Twenty-Four and 33/100 Dollars $1,831,124.33, plus interest, costs and attorneys' fees pursuant to the express terms of the Staffing Agreement.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court enter a judgment in its favor and against defendant, DIVERSAPACK, LLC:

(a)     in the amount of One Million Eight Hundred Thirty-One Thousand One Hundred Twenty-Four and 33/100 Dollars ($1,831,124.33);

(b)     pre-judgment interest in the amount of one percent (1%) per month as provided in the Staffing Agreement;

(c)     all of Elite's reasonable costs of collection, including attorneys' fees, as provided in the Staffing Agreement; and

(d)     such other relief as the Court may find to be appropriate under the circumstances of this case.

6

9609091.5

## COUNT III – ACCOUNT STATED AGAINST DIVERSAPACK MONROE

24-25. Elite repeats and realleges paragraphs 1-2 of Count I as and for paragraphs 24-25 of this Count III, as if fully set forth herein.

26-28. Elite repeats and realleges paragraphs 16-18 of Count II as and for paragraphs 26-28 of this Count III, as if fully set forth herein.

29. Commencing on or about June 2009 through May 2011, Elite issued various weekly invoices and statements of account to Diversapack Monroe for temporary labor services provided.

30. Diversapack Monroe never objected to Elite's invoices, statements of account or the amounts owed by Diversapack Monroe to Elite reflected on such invoices and statements of account.

31. Accordingly, an account stated exists between Diversapack Monroe and Elite.

32. Pursuant to the account stated, Diversapack Monroe is indebted to Elite in the sum of Eight Hundred Eight Thousand One Hundred Eleven and 44/100 Dollars ($808,111.44).

33. Elite has repeatedly demanded payment from Diversapack Monroe of the Eight Hundred Eight Thousand One Hundred Eleven and 44/100 Dollars ($808,111.44) outstanding balance, but, to date, Diversapack Monroe has failed and refused to pay the outstanding balance or any portion thereof.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK OF MONROE, LLC:

9609091.5

(a)     in the amount of Eight Hundred Eight Thousand One Hundred Eleven and 44/100 Dollars ($808,111.44);

(b)     pre-judgment and post-judgment interest as provided by statute;

(c)     Elite's court costs and related expenses; and

(d)     such other relief as the Court may find to be appropriate under the circumstances of this case.

## COUNT IV – ACCOUNT STATED AGAINST DIVERSAPACK ILLINOIS

34-38. Plaintiff repeats and realleges paragraphs 24-28 of Count III as and for paragraphs 34-38 of this Count IV, as if fully set forth herein.

39.     Commencing on or about June 2009 through May 2011, Elite issued various weekly invoices and statements of account to Diversapack Illinois for temporary labor services provided.

40.     Diversapack Illinois never objected to Elite's invoices, statements of account or the amounts owed by Diversapack Illinois to Elite reflected on such invoices and statements of account.

41.     Accordingly, an account stated exists between Diversapack Illinois and Elite.

42.     Pursuant to the account stated, Diversapack Illinois is indebted to Elite in the sum of Two Hundred Four Thousand One Hundred Fifty-One and 55/100 Dollars ($204,151.55).

43.     Elite has repeatedly demanded payment from Diversapack Illinois of the Two Hundred Four Thousand One Hundred Fifty-One and 55/100 Dollars ($204,151.55) outstanding balance, but, to date, Diversapack Illinois has failed and refused to pay the outstanding balance or any portion thereof.

8

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK OF ILLINOIS, LLC:

    (a)    in the amount of Two Hundred Four Thousand One Hundred Fifty-One and 55/100 Dollars ($204,151.55);

    (b)    pre-judgment and post-judgment interest as provided by statute;

    (c)    Elite's court costs and related expenses; and

    (d)    such other relief as the Court may find to be appropriate under the circumstances of this case.

## COUNT V – ACCOUNT STATED AGAINST DIVERSAPACK NORTH CAROLINA

44-48.    Plaintiff repeats and realleges paragraphs 24-28 of Count III as and for paragraphs 44-48 of this Count V, as if fully set forth herein.

49.    Commencing on or about June 2009 through May 2011, Elite issued various weekly invoices and statements of account to Diversapack North Carolina for temporary labor services provided.

50.    Diversapack North Carolina never objected to Elite's invoices, statements of account or the amounts owed by Diversapack North Carolina to Elite reflected on such invoices and statements of account.

51.    Accordingly, an account stated exists between Diversapack North Carolina and Elite.

52.    Pursuant to the account stated, Diversapack North Carolina is indebted to Elite in the sum of Seven Hundred Five and 28/100 Dollars ($705.28).

53.    Elite has repeatedly demanded payment from Diversapack North Carolina of the Seven Hundred Five and 28/100 Dollars ($705.28) outstanding balance, but, to

9

date, Diversapack North Carolina has failed and refused to pay the outstanding balance or any portion thereof.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK OF NORTH CAROLINA, LLC:

     (a)    in the amount of Seven Hundred Five and 28/100 Dollars ($705.28);

     (b)    pre-judgment and post-judgment interest as provided by statute;

     (c)    Elite's court costs and related expenses; and

     (d)    such other relief as the Court may find to be appropriate under the circumstances of this case.

### COUNT VI – ACCOUNT STATED AGAINST DIVERSAPACK CHINO

54-58. Plaintiff repeats and realleges paragraphs 24-28 of Count III as and for paragraphs 54-58 of this Count VI, as if fully set forth herein.

59.    Commencing on or about June 2009 through May 2011, Elite issued various weekly invoices and statements of account to Diversapack Chino for temporary labor services provided.

60.    Diversapack Chino never objected to Elite's invoices, statements of account or the amounts owed by Diversapack Chino to Elite reflected on such invoices and statements of account.

61.    Accordingly, an account stated exists between Diversapack Chino and Elite.

62.    Pursuant to the account stated, Diversapack Chino is indebted to Elite in the sum of Seven Hundred Ninety-Four Thousand Seven Hundred Seventy-Seven and 53/100 Dollars ($794,777.53).

10

9609091.5

63.     Elite has repeatedly demanded payment from Diversapack Chino of the Seven Hundred Ninety-Four Thousand Seven Hundred Seventy-Seven and 53/100 Dollars ($794,777.53) outstanding balance, but, to date, Diversapack Chino has failed and refused to pay the outstanding balance or any portion thereof.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK OF CHINO, LLC:

(a)     in the amount of Seven Hundred Ninety-Four Thousand Seven Hundred Seventy-Seven and 53/100 Dollars ($794,777.53);

(b)     pre-judgment and post-judgment interest as provided by statute;

(c)     Elite's court costs and related expenses; and

(d)     such other relief as the Court may find to be appropriate under the circumstances of this case.

### COUNT VI – ACCOUNT STATED AGAINST DIVERSAPACK

64-68.     Plaintiff repeats and realleges paragraphs 24-28 of Count III as and for paragraphs 64-68 of this Count VI, as if fully set forth herein.

69.     Commencing on or about June 2009 through May 2011, Elite issued various weekly invoices and statements of account to Diversapack for temporary labor services provided.

70.     Diversapack never objected to Elite's invoices, statements of account or the amounts owed by Diversapack to Elite reflected on such invoices and statements of account.

71.     Accordingly, an account stated exists between Diversapack and Elite.

11

72.     Pursuant to the account stated, Diversapack is indebted to Elite in the sum of Twenty-Three Thousand Three Hundred Seventy-Eight and 53/100 Dollars ($23,378.53).

73.     Elite has repeatedly demanded payment from Diversapack of the Twenty-Three Thousand Three Hundred Seventy-Eight and 53/100 Dollars ($23,378.53) outstanding balance, but, to date, Diversapack has failed and refused to pay the outstanding balance or any portion thereof.

WHEREFORE, plaintiff, ELITE STAFFING, INC., respectfully prays that this Court a judgment in its favor and against defendant, DIVERSAPACK, LLC:

(a)     in the amount of Twenty-Three Thousand Three Hundred Seventy-Eight and 53/100 Dollars ($23,378.53);

(b)     pre-judgment and post-judgment interest as provided by statute;

(c)     Elite's court costs and related expenses; and

(d)     such other relief as the Court may find to be appropriate under the circumstances of this case.

ELITE STAFFING, INC.

By: _____
One of Its Attorneys

Howard M. Berrington
Richard K. Hellerman
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, Illinois 60606
(312) 876-7100
Firm ID. 25188

9609091.5

## VERIFICATION

Under penalties provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

ELITE STAFFING, INC.

By: _____

Gary H. Cole, President

13

EXHIBIT A

## PAYMENT AGREEMENT

This Payment Agreement is made and entered into in Chicago, Illinois, on March 17, 2009, by and between Elite Staffing, Inc., an Illinois corporation ("Elite") and Diversapack LLC, a Georgia corporation ("Diversapack) [Elite and Diversapack are sometimes individually, a "Party" and collectively, the "Parties"].

1.    Background.  Elite is the exclusive temporary labor service provider to USC Solutions, Inc., Nature's Formula & Laboratories, LLC and Precision Services & Manufacturing, LLC (collectively, the "USC Companies").  As of February 7, 2009, the USC Companies are collectively indebted to Elite in the approximate sum of Three Million One Thousand Three Hundred Forty Five and 71/100 Dollars ($3,001,345.71) and have and will incur additional indebtedness to Elite for temporary labor services which Elite continues to provide (collectively, the "Elite Indebtedness").  Elite has demanded payment of the Elite Indebtedness, but the USC Companies have advised Elite that they are unable to pay the Elite Indebtedness.

Diversapack desire to buy substantially all of the assets, stock or business of one or more of the USC Companies from the USC Companies, their lenders or the shareholders or members of the USC Companies, as the case may be, and as such, Diversapack desires that Elite presently forbear from collection of the Elite Indebtedness and continue to provide temporary labor services to the USC Companies thereby enabling Diversapack to buy one or more of the USC Companies as a going concern from the USC Companies, their lenders or the shareholders or members of the USC Companies, as the case may be.

NOW, THEREFORE, in consideration of the foregoing, the mutual and covenants, duties and obligations set forth in this Payment Agreement, including, without limitation, Elite presently forbearing from collecting the Elite Indebtedness and continuing to provide temporary labor services to the USC Companies pursuant to this Payment Agreement, and other good and valuable consideration, the receipt and sufficiency of such consideration being hereby acknowledged, Elite and Diversapack hereby agree as set forth in this Payment Agreement.

2.    Labor Services.  Provided that the USC Companies pay their weekly bills for currently provided temporary labor services no later than the Wednesday of the following week, Elite will continue to provide temporary labor services to the USC Companies.

3.    Payment.  If Diversapack or its designee, directly or indirectly, acquires any of the assets, stock or business of any of the USC Companies from the USC Companies, their lenders or the shareholders or members of the USC Companies, as the case may be, Diversapack will pay to Elite the portion of the then Elite Indebtedness attributable to the USC Company so acquired in equal weekly payments, without interest, commencing the Wednesday after the closing of such acquisition and terminating three months thereafter.  The portion of the Elite Indebtedness due from each USC Company as of February 7, 2009, exclusive of an unapportioned charge for group health insurance, is set forth below:

| | |
|---|---|
| USC Solutions, Inc. | $284,886.24 |
| Nature's Formula & Laboratories, LLC | $823,950.18 |
| Precision Services & Manufacturing, LLC | $1,742,509.29 |



4.    Continuing Service.  For a period of two months after any closing described in Paragraph 3, Elite will provide to Diversapack the same pricing for temporary labor services as Elite currently provides to the USC Companies, payable net 45 days.

5.    Reaffirmation.  Except as provided in this Payment Agreement, nothing contained in this Payment Agreement shall affect the terms and conditions for Elite currently providing temporary labor services to the USC Companies nor the terms for payment of Elite's charges for such currently provided temporary labor services nor Elite's rights and remedies against the USC Companies pursuant to this Payment Agreement, at law, in equity or otherwise, including, without limitation, Elite's rights to collect the Elite Indebtedness.

6.    Default.  If either Party (the "Defaulting Party") breaches or defaults in the full and timely performance of any of its respective covenants, duties or obligations set forth in this Payment Agreement, including, without limitation, Diversapack's timely payment of a portion of the Elite Indebtedness due from Diversapack to Elite pursuant to Paragraph 3, then in addition to any and all other rights or remedies which the other Party (the "Non-Defaulting Party") may have pursuant to this Payment Agreement, at law, in equity or otherwise, the Defaulting Party will be liable and will pay to the Non-Defaulting Party upon demand a sum equal to all attorneys' fees, court costs and related expenses which the Non-Defaulting Party incurs as a result of such breach or default, together with interest at the rate of one percent (1%) per month on all sums owed by the Defaulting Party to the Non-Defaulting Party from the date of such breach or default until actually paid.

A.    Upon Diversapack's failure to fully or timely pay to Elite any of the weekly payments pursuant to Paragraph 3, which failure continues two days after electronic notice thereof from Elite to Diversapack, the balance of the portion of the Elite Indebtedness due from Diversapack to Elite pursuant to Paragraph 3 shall be immediately due and payable in full and may be collectible immediately without any further notice to or demand upon Diversapack or action by Elite.

B.    The rights and remedies described in this Paragraph 6 or elsewhere in this Payment Agreement are cumulative, are not exclusive and are in addition to and will not be deemed to exclude any other right or remedy available to the Parties pursuant to this Payment Agreement, at law, in equity or otherwise.

6.    Communications.    All notices, requests, demands, consents, waivers, directions, designations and other communications required or desired to be given pursuant to or in connection with this Payment Agreement will be given in writing and will be deemed duly given upon personal delivery, or on the third day after mailing if sent by certified mail, postage prepaid, return receipt requested, or on the day after deposit with a nationally recognized overnight delivery service which maintains records of the time, place and recipient of delivery, or electronically pursuant to Paragraph 6A, and in each case if directed as follows:

If to Elite, then to:                               If to Diversapack , then to:

Elite Staffing, Inc.                               Diversapack LLC
1400 W. Hubbard St.                                6080 Jericho Turnpike, Suite 101
Suite 200                                          Commack, New York 11726
Chicago, IL 60622                                  Attn: Tony Wesley
Attn: Gary Cole, President                         E-Mail TWesley@Diversapack.com

or to such other person, entity or address as may be designated in like manner.

7. <u>Construction.</u> This Payment Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to conflict of laws principles which would require the laws of another state or jurisdiction to be applied.

A. This Payment Agreement constitutes the entire agreement between the Parties with regard to the subject matter hereof and supersedes all prior and contemporaneously oral and written agreements, documents and communications with respect thereto.

B. This Payment Agreement may not be changed, modified or amended except by an agreement in writing signed by both Parties.

C. This Payment Agreement may not be assigned by either Party without the other Party's prior consent.

D. This Payment Agreement shall be binding upon and inure to the benefit of, and be enforceable by and against, the Parties and their respective legal representatives, successors and permitted assigns.

E. A waiver of either Party's breach or default of any of their respective covenants, duties or obligations or any term or provision of this Payment Agreement will be effective only if in writing and signed by both Parties and will be limited to the breach or default described therein; no such waiver will be deemed a waiver of any other, similar, prior, continuing or subsequent breach or default.

F. The numbers, headings or titles of the various Paragraphs of this Payment Agreement are not a part of this Payment Agreement, but are for convenience of reference only and do not, and will not be used to, define, limit, continue, modify or affect the meaning or content of the Paragraphs or this Payment Agreement.

G. The Parties acknowledge and agree that they have participated equally in the preparation of this Payment Agreement and, accordingly, if any provision of this Payment Agreement requires judicial interpretation, the court interpreting such provision shall not construe such provision or this Payment Agreement against either Party.

H. This Payment Agreement may be executed in multiple counterparts with the same effect as if the signatures to each counterpart were set forth upon a single document.

I. If any term or provision contained in this Payment Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, such term or provision will be severed herefrom and such invalidity or unenforceability will not affect any other provision of this Payment Agreement, the balance of which will remain in and have its intended full force and effect; provided, however, if said invalid or unenforceable provision may be modified so as to be valid and enforceable as a matter of law, such provision will be deemed to have been modified so as to be valid and enforceable to the maximum extent permitted by law.

J. The Parties each irrevocably agree and hereby consent and submit to the non-exclusive jurisdiction of the Circuit Court of Cook County, Illinois, and the United States District Court for the Northern District of Illinois, Eastern Division, with regard to any actions or proceedings arising from, relating to or in connection with this Payment Agreement.

LP 1912553.4 \ 36627-75924

K.   The Parties each hereby, knowingly, voluntarily, unconditionally and irrevocably waive their respective right to transfer or change the venue of any litigation filed in the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois, Eastern Division.

L.   THE PARTIES EACH HEREBY KNOWINGLY, VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY A JURY.

IN WITNESS WHEREOF, the Parties have each duly executed and delivered this Payment Agreement on the date first set forth above.

Elite Staffing, Inc.                         Diversapack LLC

By: _____                 By: _____

Title: PRESIDENT                        Title: CFO


Reviewed, acknowledged and agreed:

MARCH 25
~~February~~ __, 2009

USC Solutions, Inc.

By: _____

Title: PRESIDENT

Nature's Formula & Laboratories, LLC

By: _____

Title: PRESIDENT

Precision Services & Manufacturing, LLC

By: _____

Title: PRESIDENT

LP 1912553.4 \ 36627-75924

EXHIBIT B

### ELITE STAFFING, INC.
### STAFFING AGREEMENT

THIS AGREEMENT is dated June 8, 2009, by and between Elite Staffing, Inc. (hereinafter referred to as "Elite") and Diversapack, LLC and its affiliates (hereinafter collectively referred to as "Customer").

IN THAT, the Customer desires to use the services of Elite to provide qualified personnel who are employees of Elite in furtherance of Customer's operations; and

IN THAT, Elite is in the business of supplying qualified personnel for use in Customer's operations; and

IN THAT, Elite is able to provide and to employ qualified persons meeting Customer's requirements for such persons as Customer may use in its operations; and

In consideration of the mutual agreements and covenants contained herein, Elite and Customer agree as follows:

1.    Term of Agreement; Termination.  This Agreement shall be effective as of June 8, 2009 and shall continue in effect for a period of one (1) years (the "Initial Term"). Following the Initial Term, this Agreement shall remain in full force and effect for successive one year terms (each, an "Additional Term", and together with the Initial Term, the "Term") until either (i) the Agreement is renewed, or (ii) the Agreement is terminated in writing by either party sixty (60) days prior to the end of any Term. Unless otherwise stated herein, during the Term, either party may terminate this Agreement only if the other party (i) materially fails to perform or materially breaches any of the terms of this Agreement and then (2) fails to cure such breach or failure to perform within thirty (30) days of its receipt of a written notice of such breach or failure to perform.

2.    Classification of Employees.  Elite will provide Customer "Elite Employees" (hereafter defined), as requested and designated by Customer from time to time.  "Elite Employees" are those employees who are recruited and selected by Elite for Customer.  In recruiting and selecting Elite Employees, Elite shall match the skills and experience levels of its personnel to the specific jobs needs of Customer agreed to by Elite and Customer from time to time, and Elite will make all hiring decisions based on such qualities and specifications.

3.    Elite Agrees.

    a.  Elite shall utilize its best efforts to satisfy Customer's labor requests for qualified personnel in a timely manner.

    b.  Elite shall maintain an employee file on each of its personnel.  Elite shall not solicit Customer's employees for employment with Elite.

    c.  All personnel assigned to Customer pursuant to this Agreement shall be considered employees of Elite.  Except as provided herein, Elite shall assume the sole and

404268.3



exclusive responsibility for (i) the payment of wages to its personnel for services performed by such personnel, and (ii) for all workers' compensation injury claims, liabilities and obligations. Elite shall, with respect to its personnel, be responsible for withholding federal, state and local income taxes, making deductions for health insurance (if any) and other deductions authorized by an employee, paying Social Security taxes, and unemployment insurance. Upon request, Customer may request verification that all employment taxes are being paid on behalf of all Elite Employees assigned to Customer.

d. Elite agrees to comply with all applicable federal state and local employment related laws and ordinances, including, but not limited to, health and safety provisions.

e. Elite shall provide insurance in amounts and on terms consistent with its requirements hereunder and as required by state law. Elite agrees to name Customer an "additional insured" and an "alternate employer" on such policies and to provide Customer with a Certificate of Insurance confirming that such has been done. Elite also agrees to provide Customer with reasonable notice prior to the cancellation of any such insurance. Elite acknowledges that the failure to maintain Workers Compensation Insurance and include Customer as an additional insured or provide notification of the cancellation of insurance is a material breach of this Agreement and may permit Customer to immediately terminate this Agreement and recover damages from Elite.

f. Elite agrees not to discriminate against Elite's personnel on the basis of race, color, national origin, sex, sexual orientation, age, disability, citizenship status or veteran status or on any other basis prohibited by law and to comply with all federal and state civil rights laws.

g. Elite will invoice Customer weekly for its services. The rates for Elite's services and the payment terms for the same are set forth on Attachment A. Rates that are set forth on Attachment A may be modified if there is a change in federal, state or local tax laws and/or federal, stated or local mandated employee benefits.

h. Elite will assume complete responsibility for ensuring that all Elite Employees have properly completed an I-9 form and that such forms have been verified according to IRCA. Customer does not and will not seek to review of the I-9 forms and other employment documentation of the Elite Employees. Given that Elite takes full responsibility for IRCA compliance as it pertains to the Elite Employees, Customer retains the right to terminate this Agreement for failure to comply with IRCA.

i. If Customer notifies Elite that certain positions must be filled only with Elite personnel that are properly certified or licensed or have permits as may be required under applicable law to fill said positions, Elite shall ensure that said personnel will indeed have valid and up-to-date certification, licenses or permits.

4. Customer Agrees.

a. All personnel provided by Elite for the Term are the employees of Elite. Customer will have the opportunity to hire any employee of Elite, at no additional service

404268.3

2

fee, if such employee has been utilized by the Customer for a period of not less than sixty (60) working days. Customer shall notify Elite in writing of its intentions to hire any Elite employee.

b. Customer, at its election, will provide sufficient information about its specific job needs and qualifications so that Elite can match the skills and experience of its personnel to meet such needs.

c. Except for personnel who are provided to Customer pursuant to 3(i), Customer shall be fully responsible for training all personnel provided hereunder in all aspects of job to which any such personnel may be assigned. Customer shall not request or require any of Elite's personnel to perform any job assignment until such personnel have been fully trained to perform such job assignment.

d. Customer agrees that Elite's duty to fill assignments is subject to the availability of qualified personnel.

e. Customer will not directly or indirectly cause or encourage an Elite employee to transfer to or work for another personnel service without the consent of Elite, which such consent shall not be unreasonably withheld.

f. Unless otherwise provided herein to the contrary, Customer will immediately notify Elite of any problems regarding any of Elite's personnel, including, but not limited to, injuries and misconduct.

g. Customer agrees to consult with Elite regarding Elite's employees' conduct. Customer acknowledges that Elite is dependent upon this communication to ensure that Elite's personnel meet Customer's acceptable standards of performance.

h. If, in the sole discretion of Customer, any person assigned by Elite is incompetent, negligent, disruptive or has engaged in misconduct, Customer may require that such person leave its premises and shall inform Elite of this action immediately.

i. Customer agrees not to discriminate against Elite personnel on the basis of race, color, national origin, sex, sexual orientation, age, disability, citizenship status or veteran status, or on any other basis prohibited by law and to comply with all federal, state and local civil rights laws.

j. In consideration for the services rendered by Elite hereunder, Customer shall pay Elite the amounts set forth on Attachment A. Customer shall pay for all invoiced services performed by Elite's personnel upon receipt of an Elite service invoice. Unless otherwise directed by Elite, all unpaid, undisputed accounts will be considered in default after thirty (30) days from the invoice date, after which time a default charge will be imposed on Customer at a rate of one percent (1%) per month (ANNUAL PERCENTAGE RATE OF 12%) or the maximum legal interest rate, whichever is lower on all unpaid balances. Customer agrees to pay the default charge together with any and all reasonable costs of collection, including, but not limited to, attorneys' fees.

404268.3

3

k. Customer agrees not to pay wages directly to any Elite employee.

5.  Safety Issues and Job Classifications.

   a. Except for personnel provided to Customer pursuant to 3(i), Customer shall not assign any Elite employee without first providing appropriate training for such job in accordance with industry standards.

   b. Customer and Elite agree to comply with all applicable federal, state and local laws and ordinances, including, but not limited to, health and safety.

6.  Indemnification.

   a. Elite agrees to indemnify, defend and hold harmless Customer and its officers, directors, shareholders, employees, agents, parent, affiliates, representatives, successors and assigns of, from and against any claims, lawsuits, damages, penalties or expenses (including, but not limited to, reasonable attorneys' fees) relating to or arising out of (i) its performance of or failure to perform any of its obligations under this Agreement, or (ii) any intentional or negligent act or omission of Elite or Elite's employees or agents, except for claims arising from (a) Customer's own intentional or negligent act or omission or the intentional or negligent act or omission of Customer's employees or agents (excluding Elite), or (b) arising out of Customer's breach of any of the terms and conditions contained herein.

   b. Customer agrees to indemnify, defend and hold harmless Elite and its officers, directors, shareholders, employees, agents, parent, affiliates, representatives, successors and assigns of, from and against any claims, lawsuits, damages, penalties or expenses (including, but not limited to, reasonable attorneys' fees) relating to or arising out of (i) its performance of or failure to perform any of its obligations under this Agreement or (ii) any intentional or negligent act or omission of Customer or Customer's employees or agents, all except for claims arising from (a) Elite's own intentional or negligent act or omission or the intentional or negligent act or omission of Elite's employees or agents, or (b) arising out of Elite's breach of any of the terms and conditions contained herein.

   c. Elite's and Customer's respective duties and obligations under this Section 6 shall survive the termination, revocation or expiration of the Agreement.

7.  Authority. Each party represents and warrants to the other party that it has all necessary power and authority to enter into and perform this Agreement in accordance with the terms hereof.

8.  Compliance with Law. Each party shall, at its own expense, comply with all laws, orders and regulations of federal, state and municipal authorities, and with any lawful direction of any public officer which shall impose any duty upon that party regarding the performance under this Agreement.

9.  Entire Agreement. This Agreement constitutes and represents the entire Agreement between the parties hereto and supersedes any prior understanding or agreements,

404268.3                                    4

written or oral, between the parties hereto respecting the subject matter herein. This Agreement may only be amended by an agreement in writing executed by all of the parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective heirs, personal representatives, successors and assigns, subject, however, to the limitations contained herein. The unenforceability, invalidity or illegality of any provision of this Agreement shall not render the other provisions unenforceable, invalid or illegal. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same document.

10.   Waivers. No waiver of any provision of this Agreement shall be effective unless it is in writing, signed by the party against whom it is asserted, and any such written waiver shall only be applicable to the specific instance to which such waiver is related and shall not be deemed to be a continuing or further waiver.

11.   Separability. Each and every covenant and agreement herein shall be separate and independent from any other and the breach of any covenant or agreement shall in no way or manner discharge or relieve the performance of any other covenant or agreement.

12.   Governing Law. This Agreement shall be governed by the internal laws of the State of Illinois, without regard to the conflicts of laws rules thereof that would require the application of the laws of any other jurisdiction.

13.   Headings. Captions and articles headings contained in this Agreement are for convenience and reference only and in no way define, describe, extend or limit the scope or intent of this Agreement nor the intent of any provision hereof.

14.   Notice. All notices or other communications shall be deemed given by: (1) personal delivery, (2) telephone facsimile, electronic mail, or overnight courier and such notice is followed up by certified mail, return receipt requested, or (3) a written notice mailed via certified mail, return receipt requested; such notices to be addressed to the parties at the addresses set forth below:

|  |  |
|---|---|
| If to Customer: | Diversapack, LLC.<br>6080 Jericho Turnpike<br>Commack, NY 11725<br>Attn: Al Cowger<br>Facsimile: 631.543.1081<br>Email: Acowger@diversapack.com |
| If to Elite: | Elite Staffing, Inc.<br>1400 West Hubbard St.<br>Chicago, Illinois 60622<br>Attn: Gary Cole<br>Facsimile: 773-235-7443 |

404268.3

5

15.  <u>Subcontracting and Assignment</u>. This Agreement may not be assigned, delegated or encumbered by Elite or Customer without the prior written consent of the other, except that, either Customer or Elite may assign this Agreement to any of its parent, subsidiary or affiliated corporations or to the transferee of the whole or any part of such party's business.

16.  <u>Independent Contractor</u>. Elite shall remain an independent contractor and shall have no power, nor shall Elite represent that Elite has any power, to bind Customer or to assume or to create any obligation express or implied on behalf of Customer.

IN WITNESS WHEREOF, the parties have hereunto set their hands on the day, month and year first above written.

Elite Staffing, Inc.                                    Diversapack, LLC

By _____              By _____
Title _Presidour_                              Title _____ CAO

404268.3                                        6

## ATTACHMENT A

### COMPENSATION FOR THE CHINO, CA FACILITY

**ELITE EMPLOYEES**

Elite's employee regular or overtime hourly wage (as the case may be) plus 29.5% of such applicable wage.

**TESTING AND INVESTIGATION FEES**

If Customer requests any screening, testing or investigation other than as expressly set forth in this Agreement, Customer and Elite shall negotiate in good faith the cost and terms of Elite performing the same

404268.3