## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 4273 | **DATE** | 1/22/2013 |
| **CASE TITLE** | Elite Staffing, Inc. vs. Diversapack, LLC et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to dismiss Count II of defendants' counterclaim (#77) is granted without prejudice to defendants' filing an amended counterclaim on or before February 5, 2013. See statement section of this order for details.

■ [ For further details see text below.]

Notices mailed by Judicial staff.

### STATEMENT

Plaintiff Elite Staffing, Inc. filed a seven count complaint against Diversapack and its affiliates, Diversapack of Illinois, LLC, Diversapack of North Carolina, LLC (collectively "defendants"),[1] Diversapack of Monroe, LLC, Diversapack of Chino, LLC, and Universal Packaging Systems, Inc. d/b/a Diversapack of California[2] alleging (1) breach of payment agreement; (2) breach of staffing agreement; and (3)–(7) account stated against each individual defendant. Defendants answered and, with leave of court, filed a second amended counterclaim ("SAC") asserting three counts against plaintiff including (1) breach of contract; (2) violation of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. §§ 1961 *et seq.*, and (3) set off. (Dkt. #73.)[3] Plaintiff has moved to dismiss count II of the counterclaim arguing that defendants failed to plead the conduct of an enterprise and a predicate act of racketeering activity.[4]

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *GE Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the defendant's counterclaim and draws all reasonable inferences from those facts in the defendant's favor. *See Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the counterclaim must not only provide fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl*. v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A [counter]claim has facial plausibility when [it] pleads factual content that allows the court to draw the reasonable inference that the [plaintiff] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the counterclaim need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr*., 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

**Analysis**[5]

RICO prohibits certain conduct involving a "pattern of racketeering activity." 18 U.S.C. §§ 1961–1968. To adequately plead a RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985); *Goren* v. *New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A party may not simply allege these elements "in boilerplate fashion; instead [it] must allege sufficient facts to support each element." *Goren*, 156 F.3d at 727. To satisfy the "conduct" requirement, "a plaintiff must allege that the defendant 'participated in the operation or management of the enterprise itself,' and that the defendant played 'some part in directing the enterprise's affairs.'" *Id.* (quoting *Reves* v. *Ernst & Young*, 507 U.S. 170, 179 & 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)). "Racketeering activity" includes any act that is indictable under the § 274 of the Immigration and Nationality Act, *see* 18 U.S.C. § 1961(1)(F), which prohibits any person from knowingly or recklessly concealing, harboring, or shielding from detection an illegal alien in the United States. 8 U.S.C. § 1324(a)(1)(A)(iii). A "pattern of racketeering activity" consists of at least two acts of racketeering activity committed within a ten-year period. 18 U.S.C. § 1961(5).

As to the first factor, defendants allege that plaintiff engaged in the conduct of an enterprise by exercising control over the manner in which defendants' employees were selected. Specifically, defendants allege that plaintiff "recruit[ed] and select[ed] employees for Diversapack" and that plaintiff was "solely responsible for [the] payment of wages, for worker's compensation injury claims and liability, . . . for withholding federal and state income taxes, social security taxes and unemployment insurance," and for ensuring that employees completed an I-9 immigration form and had the legal right to work in the United States. (SAC ¶¶ 14–16.). Defendants allege that "[b]y continuing so to employ illegal aliens at [Diversapack's] factories from June 2009 through April 2011, Elite conducted the affairs of the DPK RICO Parties . . . through a pattern of racketeering activity. . . ." (*Id.* ¶ 37.)

These allegations are insufficient to demonstrate that plaintiff participated in the operation or management of defendants' enterprise, *i.e.*, the business of manufacturing and packaging products. At best, defendants have alleged that plaintiff provided contractual employment services to the enterprise. The Seventh Circuit has stated that "simply performing services for an enterprise . . . is not enough to submit an individual to RICO liability under § 1962(c))." *Goren*, 156 F.3d at 728; *see Crichton* v. *Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("Allegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise do not suffice."). The same is true for the "[s]imple exertion of control over one aspect of an enterprise's activities," which in this case would be plaintiff's alleged control over the hiring and firing of enterprise employees. *Slaney* v. *Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001). Although the services provided by plaintiff may have been central to the success of the enterprise, defendants cite no authority for their position that plaintiff's providing to defendants employees who have been hired and are paid by plaintiff is sufficient to satisfy the "operation or management test." Nor does the argument have persuasive force.

Even assuming that defendants could satisfy the first factor, they have failed to plead a pattern of "racketeering activity." Section 274 of the Immigration and Nationality Act, upon which defendants rely, provides for criminal penalties for any person who

"knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;"

**STATEMENT**

8 U.S.C. § 1324(a)(1)(A)(iii). Defendants claim that "[b]y hiring undocumented aliens to work at the [defendants'] factories, and by keeping them employed at those factories, [plaintiff] concealed, harbored and shielded those aliens from detection . . . for the purpose of financial gain." SAC ¶ 35; *see United States* v. *Ye*, 588 F.3d 411, 414 (7th Cir. 2009) (As noted by the Seventh Circuit, "'conceal,' 'harbor,' and 'shield from detection' have independent meanings, and thus a conviction can result from committing (or attempting to commit) any one of the three acts.").

As pleaded, defendants allege that plaintiff violated all three commands by hiring and maintaining employment of illegal aliens. The cases cited by defendants, however, fail to persuasively demonstrate that merely employing illegal aliens is sufficient to violate § 1324(a)(1)(A)(iii). For example, defendants cite *United States* v. *Ye*, 588 F.3d at 417, and *United States* v. *Kim*, 193 F.3d 567, 574–75 (2d Cir. 1999), for the position that "by knowingly or recklessly hiring an illegal alien, an employer facilitates the alien's remaining in the United States and is therefore is guilty of 'harboring' that alien under § 1324." (Defs.' Resp. at 5.) The issue in *Ye*, however, was whether the lower court erred in instructing the jury on the meaning of the term "shielding," not "harboring." Although the court affirmed Ye's conviction under § 1324(a)(1)(A)(iii), the facts in that case bear little resemblance to those alleged here. *See id.* at 413 (Ye admitted, *inter alia*, that he entered into lease agreements and made apartment payments for employees he knew to be illegal aliens, he provided these employees with transportation to work, and he did not make them complete employment paperwork or time cards).[6] Similarly, the passage defendants cite in *Kim*, 193 F.3d at 573, does not stand for the position that merely hiring illegal aliens is enough to subject an individual to liability under § 1324 but, rather, for the position that § 1324 applies to employers. *See id.* (holding that "§ 1324, on its face, does not restrict the persons within its reach" and that "the evolution of § 1324(a)(i)(A)(iii) to its present form makes clear that Congress intended it to cover employers"). As in *Ye*, the facts in *Kim* are distinguishable. *See id.* at 574–75 (affirming conviction for harboring under § 1324(a)(i)(A)(iii) where defendant knew employee was illegal alien, spoke with employee many times regarding her illegal status, instructed employee to falsely report to the INS on multiple occasions and stated that if his illegal hiring scheme was discovered by the INS he could go to jail).[7]

Plaintiff, on the other hand, has cited cases (albeit not from this Circuit) where the court held that the mere hiring of illegal aliens is insufficient to constitute harboring, concealing, or shielding under § 1324(a)(1)(A)(iii). *See, e.g.*, *Hager* v. *ABX Air, Inc.*, No. 2:07-CV-317, 2008 WL 819293, at *6 (S.D. Ohio Mar. 25, 2008) ("The different courts that have addressed RICO claims based on violations of § 1324(a)(1)(A)(iii) have uniformly held that merely knowingly hiring and employing an illegal alien does not constitute concealing, harboring, or shielding that alien from detection. Some manner of affirmative conduct, such as providing housing or informing aliens of impending government raids, is required to constitute a violation of § 1324(a)(1)(A)(iii).") (collecting cases). From the parties' briefs and the court's research it appears that the Seventh Circuit has not directly addressed this issue. This court finds, however, that plaintiff has presented a persuasive argument in favor of dismissal.

The motion to dismiss the second amended counterclaim is granted without prejudice to defendants' filing an amended counterclaim if they can plead facts in good faith that plausibly permit an inference that plaintiff conducted defendants' enterprise and facts that implicate concealing, harboring or shielding under § 1324(a)(1)(A)(iii). *See*, *e.g.*, *Ye*, 588 F.3d at 415–16; *United States* v. *Costello*, 666 F.3d 1040, 1050 (7th Cir. 2012).

---

1. The second amended counterclaim is brought only on behalf of Diversapack, Diversapack of Illinois, LLC, and Diversapack of North Carolina, LLC. (*See* SAC ¶¶ 4–6.)

2. Defendant Universal Packaging Systems, Inc. was added as a defendant after the present motion was fully briefed. (*See* Dkt. #88.)

3. This court possesses subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the plaintiff is not a citizen of the same state as any defendant. (*See* Am. Notice of Removal, Dkt. #18 ¶¶ 7–10.)

4. Plaintiff also argued that defendants failed to plead a pattern of racketeering activity and proximate cause but the court declines to reach these arguments.

5. For the purpose of deciding the motion the court assumes that the parties are familiar with the facts alleged in the counterclaim.

6. Defendants also cite *Ye* for its position that "§ 1324(a)(1)(A)(iii) encompasses a defendant's conduct tending to substantially facilitate the alien's remaining in the United States illegally." (Defs.' Resp. at 4.) *Ye* does not stand for this proposition, however. In *Ye*, the Seventh Circuit thoroughly reviewed the origin of the term "substantially facilitate" and concluded that whether "conduct 'tends substantially' to assist an alien is irrelevant" for the purpose of imposing liability under § 1324(a)(1)(A)(iii); rather, "the statute requires no specific quantum or degree of assistance." *Ye*, 588 F.3d at 416; *see United States* v. *Costello*, 666 F.3d 1040, 1050 (7th Cir. 2012) ("Some cases, in order to refine the definition of 'harboring,' adopt the formula 'substantial facilitation of' or 'substantially to facilitate' the alien's presence, which strikes us as too vague to be a proper gloss on a criminal statute.") (internal citations omitted).

7. Defendants also cite *Edwards* v. *Prime, Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010) for the same position, but there the court held that it "need not decide whether knowingly employing illegal aliens alone is enough" to violate § 1324(a)(1)(A)(iii) because "[h]ere the allegations are that the defendants not only knowingly employed illegal aliens, but also that they provided them with social security numbers and names, and paid them in cash in order to conceal, harbor, and shield the aliens from detection."